IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rostislav Krasnov, D.D.S.,      :
         Petitioner      :
                           :   No.  1113 C.D. 2019
        v.               :
                           :   Submitted:  May 11, 2020
Bureau of Professional and      :
Occupational Affairs, State Board  :
of Dentistry,             :
         Respondent    :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE J. ANDREW CROMPTON, Judge

## *OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                      FILED:  June 9, 2020

Rostislav Krasnov, D.D.S. (Krasnov), petitions for review of the July 23, 2019 Final Adjudication and Order of the State Board of Dentistry (Board), which affirmed the Proposed Adjudication and Order of a hearing examiner that recommended imposing a civil penalty in the amount of $2,000.00 and issuing a public reprimand of Krasnov because he received extraterritorial discipline and failed to report the same.  Upon review, we affirm.

**Background**

The instant action was commenced by the filing of an order to show cause (OTSC) on December 30, 2017, against Krasnov.  (Reproduced Record (R.R.)

at 4a.)  The OTSC, brought pursuant to the Dental Law[1] and the Act of July 2, 1993, P.L. 345, No. 48, *as amended*, 63 P.S. §§2201-2207 (Act 48), required Krasnov to show cause as to why the Board should not suspend, revoke, or otherwise restrict his license, impose a penalty, and order payment of the cost of litigation.[2]  (R.R. at 4a.)  The OTSC alleged that Krasnov is licensed to practice dentistry in the Commonwealth and at all times relevant held a license to practice within the Commonwealth, which was current though March 31, 2019.  (R.R. at 4a-5a.)

The OTSC charged Krasnov with two counts.  (R.R. at 5a-6a.)  Count I alleged that at all relevant times, Krasnov was authorized to practice dentistry in the State of Connecticut, and that on March 23, 2017, the Connecticut Department of Public Health (Connecticut DOH), found Krasnov to be in violation of Connecticut's laws, rules, code, and/or regulations with regard to sterility/hygiene.  (R.R. at 5a.)  The OTSC further alleged that Kransov was penalized for these infractions, and therefore, the Board is authorized to assess penalties because Krasnov violated section 4.1(a)(5) of the Dental Law, added by the Act of December 20, 1985, P.L. 513, 63 P.S. §123.1(a)(5),[3] as he was subject to extraterritorial discipline.  (R.R. at

---

[1] Act of May 1, 1933, P.L. 216, *as amended*, 63 P.S. §§120-130l.

[2] Prior to filing the OTSC, the Office of General Counsel notified Krasnov, by letter dated December 1, 2017, that he could proceed by responding to the OTSC and proceeding to a formal hearing, or he could sign a consent agreement, by which a penalty would be assessed without a formal adjudication.  (R.R. at 1a-2a.)

[3] This section provides in full:

> (a) The board shall have authority, by majority action, to refuse, revoke or suspend the license of any dentist, dental hygienist or restricted faculty licensee or certificate of an expanded function dental assistant for any or all of the following reasons:

**(Footnote continued on next page…)**

2

6a.)   Count II alleged that Krasnov failed to self-report the Connecticut DOH's discipline to the Board, as required, within 90 days of its disposition or on his biennial renewal application, whichever occurred sooner, and had therefore violated section 11.5 of the Dental Law, added by the Act of December 20, 1985, P.L. 513, 63 P.S. §130f.[4]  (R.R. at 6a-7a.)

Accordingly, the OTSC recommended the imposition of one or more of the following penalties: the revocation, suspension, or other restriction of any of Krasnov's professional licenses held in Pennsylvania, or the imposition of other disciplinary or corrective action the Board is authorized to impose.  (R.R. at 7a.)  The

---

**(continued…)**

> (5) Having a license to practice dentistry or dental hygiene or restricted faculty license or certificate for expanded function dental assisting revoked, suspended or having other disciplinary action imposed or consented to by the proper licensing authority of another state, territory or country or his application for license refused, revoked or suspended by the proper licensing authority of another state, territory or country.

63 P.S. §123.1(a)(5).

[4] This section, in relevant part, provides:

> Any licensed dentist or dental hygienist, restricted faculty licensee or certified expanded function dental assistant of this Commonwealth who is also licensed to practice dentistry or as a dental hygienist, as a restricted faculty licensee or a certified expanded function dental assistant in any other state, territory or country shall report this information to the board on the biennial renewal application.  Any disciplinary action taken in other states, territories or countries shall be reported to the board on the biennial renewal application or within ninety (90) days of disposition, whichever is sooner.

63 P.S. §130f.

OTSC also recommended the imposition of a civil penalty of up to $10,000.00 for every violation of the Dental Law. *Id.* Krasnov filed an answer and new matter, and the Board replied to the new matter.

A hearing was conducted on August, 10, 2018, before the Board. (R.R. at 73a.) Following the hearing, the hearing examiner issued a Proposed Adjudication and Order, which included the following findings: Krasnov, at all times relevant, held a license to practice dentistry in Pennsylvania, which was current through March 31, 2019. (Findings of Fact Nos. 1-3.) Krasnov is also licensed to practice in Connecticut, New York, New Jersey, Florida, California, Texas, and Illinois, with licenses active in all of these states. (F.F. No. 5.)

On November 19, 2015, the Connecticut DOH conducted an unannounced site inspection of Krasnov's Stamford, Connecticut office and "observed several deficiencies" relating to sanitation and infection control and prevention which Krasnov was required to correct. (F.F. No. 7.) On April 8, 2016, the Connecticut DOH conducted a re-inspection and observed several more deficiencies. (F.F. No. 8.) Krasnov conducted testing, and retained the services of a certified infection control and prevention professional, Karen M. Taylor, RN, MSN, CIC (Taylor), who provided services with respect to infection control standards, policies, and procedures. (F.F. Nos. 9-10.) Following two inspections on July 27 and August 11, 2016, Taylor found that Krasnov had corrected the sanitary and infection control problems observed by the Connecticut DOH and was providing safe and competent care. (F.F. No. 11.)

On April 26, 2017, by way of consent order,[5] the Connecticut DOH found that Krasnov had deviated from the standards of infection control as prescribed in its laws, rules, code, and/or regulations, and therefore, assessed a $5,000.00 civil penalty, and placed him on a probationary period for four months, required him to complete a course on infection control, obtain the services of a practitioner certified in infection control, and submit infection control monitoring reports to the Connecticut DOH. (F.F. Nos. 12-13.)

Taylor continued to conduct monitored and unannounced visits from April 10 to August 10, 2017, and found that Krasnov's practice complied with infection control standards. (F.F. No. 14.) Krasnov cooperated with Connecticut DOH, retained the services of Taylor, completed infection control courses, and satisfied the terms of his probation. (F.F. No. 15.) Since the Consent Order was issued, Krasnov's office has been in compliance with all applicable rules and

---

[5] The Consent Order indicates that on November 19, 2015, and April 8, 2016, Krasnov's dental practice deviated from standards of infection control as follows:

> a. [Krasnov] failed to adequately clean and/or sterilize a variety of dental instruments and/or equipment;
> b. [Krasnov] failed to perform adequate chemical indication and/or spore testing for the autoclave;
> c. [Krasnov] failed to adequately clean and/or flush dental device(s) and/or instruments between patients;
> d. [Krasnov] failed to adequately clean and/or disinfect clinical counters and other surfaces of the dental operatory between patients;
> e. [Krasnov] failed to adequately store a variety of instruments; and/or
> f. [Krasnov] failed to dispose of expired medications and/or materials.

(R.R. at 12a.)

regulations and he has implemented additional infection control policies including record keeping, training, sterilization, and oversight.[6] (F.F. Nos. 18, 20, 21.)

The examiner found that Krasnov is well-regarded in his community, never had any complaints from patients, has received many awards, and the Connecticut DOH disciplinary action was the first in his many years of practice. (F.F. No. 22.) Moreover, the examiner concluded that Krasnov reported the Connecticut DOH action to all other states where he is licensed during their respective renewal periods, and none of those states have acted against him as a result of the Connecticut discipline. (F.F. No. 23.) However, as of August 7, 2018, Krasnov had not reported the Connecticut DOH disciplinary action to the Board. (F.F. No. 24.) The examiner concluded that Krasnov failed to report the action to the Board "not because he was trying to hide his discipline, but rather, because he was waiting for the next renewal cycle." (F.F. No. 25.)

Based on these facts, the hearing examiner issued the following, relevant, conclusions of law:

> 3. Respondent is subject to discipline under the [Dental Law] at 63 P.S. §123.1(a)(5), in that [Krasnov] has had disciplinary action taken against his license by the proper licensing authority of Connecticut in 2017. ([F.F.] Nos. 7-13[.])
>
> 4. [Krasnov] is subject to discipline under the [Dental Law] at 63 P.S. §130f, in that [Krasnov] failed to report the April 26, 2017 Connecticut disciplinary action to the

---

[6] The hearing examiner also found that Krasnov has complied with infection control guidelines for the past 25 years and insurance carrier plan procedures for the past 20 years, that he has worked with Medicare recipients without any problems, and has been on the peer review committees for one of the "largest agencies in New Jersey." (F.F. No. 19.)

6

Board within ninety (90) days of [its] disposition. ([F.F.] No. 24[.])

5. The Board is authorized to impose disciplinary or corrective measures or a civil penalty pursuant to the [Dental Law] at 63 P.S. §§123.1 and 129.1.[7]

(Conclusions of Law (C.L.) 3-4.) The examiner concluded that Krasnov was subject to discipline in Connecticut on April 26, 2017, and as of August 7, 2018, had failed to report the disciplinary action to the Board. (Proposed Adjudication and Order at 9-10.) The hearing examiner concluded that Krasnov acknowledged the Connecticut discipline and that the Commonwealth presented undisputed documentary evidence that Krasnov was disciplined by the Connecticut DOH, satisfying Count I of the OTSC, and that Krasnov failed to report the disciplinary action to the Board, satisfying Count II of the OTSC. *Id.* at 10.

The examiner concluded that Krasnov cooperated with the Board and offered testimony to mitigate the severity of the sanction. *Id.* at 12. Specifically, the examiner stated that Kransov presented evidence that he completed his probation period with the Connecticut DOH, provided safe and competent dental care, and established protocols to ensure high quality care at his Stamford office. *Id.* Further, the examiner concluded that Krasnov forthrightly admitted he did not report the Connecticut action to the Board, and that he was not trying to hide his discipline, but that he was waiting for the next renewal period in Pennsylvania. *Id.* The examiner explained that although he is not bound by the rule of *stare decisis*, he must render consistent opinions and should either follow, distinguish, or overrule the Board's own precedent. *Id.* at 12-13. Thus, the examiner pointed to two of the Board's cases

_____

[7] Section 10.1 of the Dental Law, added by the Act of December 20, 1985, P.L. 513, 63 P.S. §129.1.

7

where a public reprimand and a civil penalty were imposed for solely receiving extraterritorial discipline or receiving extraterritorial discipline and failing to report the same. *Id*. at 13. As such, the examiner issued a proposed order imposing a civil penalty of $2,000.00 against Krasnov and issuing a public reprimand against him. (R.R. at 251a.) Krasnov filed exceptions to the proposed order. (R.R. at 254a-59a.)

The Board issued a Final Adjudication and Order on July 23, 2019, adopting the hearing examiner's Proposed Adjudication and Order. (R.R. at 266a.) In the corresponding decision, the Board adopted and incorporated the hearing examiner's findings of fact, conclusions of law, and discussion concluding that they were supported by the evidence and the law.[8] (Final Adjudication and Order at 2.) Additionally, the Board responded to Krasnov's assertion that, because he was not dishonest or deceitful, the discipline imposed was unnecessary in this case. *Id*.

The Board acknowledged the significant mitigation efforts that Krasnov took and noted that he completely resolved all underlying issues with regard to the Connecticut DOH. *Id*. at 4. The Board explained that it "weighed the mitigation against the violations in Connecticut" and noted the "serious nature of [the] infection control violations and the risk that such violations caused to [Krasnov's] patients." *Id*. The Board explained that it has a duty to protect the health, safety, and welfare of the citizens of Pennsylvania and that public discipline works not only to deter future violations, but is also a way for the Board to notify the citizenry of the violations committed by its licensees. *Id*. Thus, the Board concluded that the proposed adjudication and order was justified and that a public reprimand and civil penalty

_____

[8] The Board did not number the pages on its Final Adjudication and Order and, thus, for the sake of clarity we have numbered the Final Adjudication and Order as pages 1 through 5, beginning on page 261a and ending on page 265a of the Reproduced Record.

8

were sufficient to put the citizens of the Commonwealth on notice of the Connecticut discipline and to deter future violations by Krasnov and other licensees. *Id*. at 4-5. Krasnov subsequently appealed to this Court.

## Discussion

On petition for review,[9] Krasnov raises the question of whether "the Board abused its discretion and/or committed an error of law by imposing discipline on [Krasnov] when [he] has already been disciplined in Connecticut for office practices that occurred in Connecticut which were completely resolved." (Krasnov's Br. at 4.) In support, Krasnov argues that an administrative agency's exercise of discretion should be overturned if it is found to be an abuse of discretion and that an agency abuses its discretion where its judgment is manifestly unreasonable.

As such, Krasnov argues that the imposition of discipline against him by the Board was manifestly unreasonable; particularly, he points to the evidence demonstrating that he mitigated his conduct. Krasnov argues that he entered into a consent agreement in Connecticut related to his wrongdoing; he did not admit to any wrongdoing in the agreement, but stipulated to the imposition of a penalty and the imposition of probation; he was cooperative with the Connecticut DOH; and he paid a fine, retained professional services, completed courses, and otherwise satisfied the terms of his probation. He also points out that Taylor provided and continues to provide monitoring services at the Stamford office and that after numerous

---

[9] Our scope of review of the Board's decision "is limited to determining whether constitutional rights were violated, [and] whether the decision is in accordance with the law and supported by substantial evidence." *Mostatab v. State Board of Dentistry,* 881 A.2d 1271, 1273 n.2 (Pa. Cmwlth. 2005) (citing *McGrath v. State Board of Dentistry*, 632 A.2d 1027 (Pa. Cmwlth. 1993)).

9

inspections, she found that the office was in compliance with infection control standards. Krasnov also argues that he has implemented additional infection control policies including in-person training for employees, and unannounced visits by Taylor. He also points out that he has designated an employee who maintains infection control records, provides training, ensures instruments are sterilized, and observes office protocol. Krasnov points to his history of practicing dentistry without any complaints or discipline, compliance with regulatory guidelines, and his respect within the community. Krasnov explains that he reported the Connecticut discipline to all other states where he is licensed during their respective renewal periods and was not disciplined, and that his failure to report the Connecticut discipline to the Board was not because he was trying to hide his discipline, but rather, that he was waiting for the next renewal cycle.

Summarily, Krasnov argues that the discipline imposed by the Board is unwarranted because he resolved the issue with the Connecticut DOH, no patients were harmed, and the conduct in Connecticut posed no threat of harm to patients in Pennsylvania. He points out that he went above and beyond the recommendations of the Connecticut DOH. He maintains that he did not act with the intent to deceive the Board and intended to report the discipline during the next renewal cycle as he did in every other state. Thus, he argues that he is entitled to leniency, and that further punishment by the Board would be duplicative and unwarranted because the underlying issues with regard to the Connecticut discipline have been resolved.

In response, the Board argues that under the Dental Law, it has the power to impose discipline against Krasnov because he was disciplined by the Connecticut DOH, and thus, its imposition of a public reprimand and a $2,000.00 civil penalty is a lawful and reasonable exercise of its power. Specifically, the Board

10

points to section 4.1(a)(5) of the Dental Law for the proposition that it has the authority to "refuse, revoke, or suspend" a dentist's license if that dentist has his license "revoked suspended, or [] other disciplinary action imposed by the proper licensing authority of another state . . . ." 63 P.S. §123.1(a)(5). It maintains that if the license of such dentist may be refused, revoked, or suspended under section 4.1(a) of the Dental Law, 63 P.S. §123.1(a), then the Board may impose a range of disciplinary measures, including, pertinently, a public reprimand under section 4.1(b)(2) of the Dental Law, 63 P.S. §123.1(b)(2), and a civil penalty up to $10,000.00 under section 2205(b)(4) of Act 48, 63 P.S. §2205(b)(4). In support of its position on this point, the Board argues that it did not abuse its discretion because it did not impose more severe sanctions against Krasnov (such as suspension or revocation of his license or a $10,000.00 penalty), but rather, it "acknowledged [Krasnov's] evidence in mitigation, and imposed a public reprimand and a $2,000[.00] civil penalty" instead. (Board's Br. at 11.) The Board argues that this is in accord with the gravity of his infractions in Connecticut, and his failure to report, as required by law. The Board maintains that reciprocal discipline is a valid exercise of the Commonwealth's police power, and prevents licensed professionals from violating the rules of another jurisdiction and continuing to practice in another jurisdiction with an unblemished record.

Next, the Board argues that this Court is precluded from vacating the penalty imposed by the Final Adjudication and Order as it is not arbitrary, capricious, or an abuse of discretion. In support, the Board argues that Krasnov is asking this Court to reweigh the sanction it imposed, and that we are specifically precluded from doing so pursuant to our Supreme Court's decision in *Slawek v. State Board of Medical Education and Licensure*, 586 A.2d 362 (Pa. 1991). It posits that under

11

*Slawek*, our review of its action "is not whether [the order] was reasonable, but whether it was made in 'accordance with the law' (*i.e.*, whether it was made in bad faith, and whether it was fraudulent or capricious)." (Board's Br. at 13 (quoting *Slawek*, 586 A.2d at 365.)) The Board maintains that, in deciding what sanction to impose, it expressly acknowledged Krasnov's mitigating evidence and considered the fact that he resolved his issues in Connecticut, is well regarded in his community, has no prior disciplinary history, and that he self-reported to every other jurisdiction in which he was licensed. With that in mind, the Board determined that a disciplinary sanction was warranted to put the public on notice and deter future conduct.

**Whether the Board Committed an Error of Law or Abused its Discretion by Imposing Discipline on Krasnov**

As explained, this action is governed by the Dental Law, specifically, sections 4.1(a)(5) and 11.5, 63 P.S. §§123.1(a)(5), 130f. Section 4.1(a)(5) of the Dental Law provides that

> (a) **[t]he board shall have authority, by majority action, to refuse, revoke or suspend the license of any dentist**, dental hygienist or restricted faculty licensee or certificate of an expanded function dental assistant **for any or all of the following reasons**: . . .
>
> * * *
>
> (5) **Having a license to practice dentistry** or dental hygiene or restricted faculty license or certificate for expanded function dental assisting revoked, suspended or **having other disciplinary action imposed or consented to by the proper licensing authority of another state**, territory or country or his application for license refused, revoked or suspended by the proper licensing authority of another state, territory or country.

12

63 P.S. §123.1(a)(5) (emphasis added). In other words, section 4.1(a)(5) of the Dental Law authorizes the Board to refuse, revoke, or suspend the license of a dentist if that dentist has disciplinary action consented to or imposed by the proper licensing authority of another state. Here, the Board clearly had authority under section 4.1(a)(5) to discipline Krasnov for consenting to discipline by the Connecticut DOH. In conjunction with section 4.1(a)(5) of the Dental Law, section 4.1(b)(2) of the Dental law provides, in full, that

> (b) [w]hen the board finds that the license or certificate of any person may be refused, revoked[,] or suspended under the terms of this section, the board may: . . .
>
> * * *
>
> (2) Administer a public reprimand.

63 P.S. §123.1(b)(2). Thus, under section 4.1(b) of the Dental Law, if the Board determines that under section 4.1(a) of the Dental Law an individual's conduct merits license refusal, revocation, or suspension, the Board may also impose less severe sanctions such as a public reprimand. In other words, if the Board finds that a dentist's license may be refused, revoked, or suspended, it may choose to implement enunciated disciplinary measures, including a public reprimand, without having to refuse, revoke, or suspend the dentist's license. Moreover, section 4.1(a)(5) also allows the Board to implement discipline if the licensed individual **consents** to discipline.

On similar lines, section 4.1(a)(6) of the Dental Law, 63 P.S. §123.1(a)(6), provides that "violating any provision of [the Dental Law]" may also result in the refusal, revocation, or suspension of a dentist's license, and by extension

13

other discipline, such as public reprimand under section 4.1(b) of the Dental Law. Based on the evidence of record concerning the infractions and consent agreement in Connecticut, the Board determined that Krasnov's license may be refused, revoked, or suspended. Having done so, it exercised its discretion to impose other sanctions under the Dental Law. Further, with regard to Krasnov's failure to report the extraterritorial discipline, section 11.5 of the Dental Law, in relevant part, provides that

> **[a]ny licensed dentist** or dental hygienist, restricted faculty licensee or certified expanded function dental assistant of this Commonwealth who is **also licensed** to practice dentistry or as a dental hygienist, as a restricted faculty licensee or a certified expanded function dental assistant **in any other state, territory or country shall report this information to the board on the biennial renewal application. Any disciplinary action taken in other states, territories or countries shall be reported to the board on the biennial renewal application or within ninety (90) days of disposition, <u>whichever is sooner</u>.**

63 P.S. §130f (emphasis added).

Here, at all pertinent times, Krasnov was licensed to practice dentistry in Pennsylvania.[10] (F.F. No. 1) On November 19, 2015, the Connecticut DOH conducted an unannounced site inspection of Krasnov's dental office in Stamford, Connecticut and observed several violations. (F.F. No. 7.) The Connecticut DOH inspected Krasnov's Stamford office again on April 8, 2016, and found "several

---

[10] The Board adopted and incorporated the findings of fact of the Proposed Adjudication and Order. Findings of fact that are not challenged are binding on appeal. *Kauffman Metals, LLC v. Department of Labor and Industry, Office of Unemployment Compensation Tax Services*, 126 A.3d 1045, 1052 (Pa. Cmwlth. 2015).

14

deficiencies." On April 26, 2017, the Connecticut DOH and Krasnov entered into a Consent Order, which stated that Krasnov had "deviated from the standards of infection control in his Stamford dental office," and disciplined him accordingly. (F.F. Nos. 12-13.) Although, as of August 7, 2018, Krasnov failed to report the Connecticut discipline to the Board, he maintains that he was waiting for the next renewal cycle to report to the Board. (F.F. Nos. 24-25.)

As required under section 4.1(a)(5) of the Dental Law, the Board established that (1) Krasnov was licensed to practice in Pennsylvania, and (2) he consented to discipline via consent order with the Connecticut DOH. Thus, because Krasnov consented to extraterritorial discipline under section 4.1(a)(5), the Board concluded that Krasnov violated and was subject to discipline under the Dental Law.

Section 11.5 of the Dental Law provides that if disciplinary action is taken against a dentist by another state, that discipline must be reported to the Board "on the biennial renewal[11] application or within ninety (90) days of disposition, **whichever is sooner**." 63 P.S. §130f (emphasis added). As of August 7, 2018, Krasnov had failed to report the April 26, 2017 discipline to the Board. (F.F. No. 24.) Despite Krasnov's innocuous intentions, section 11.5 of the Dental Law requires that he report his discipline on his biennial renewal application or within 90 days of the discipline, whichever occurred sooner. The discipline occurred on April 26, 2017, and Krasnov was not due for biennial renewal until March 31, 2019. Pursuant to the "whichever is sooner" provision, Krasnov had to make the report within 90 days of the discipline, which would have been on July 25, 2017. Thus, the Board correctly concluded that Krasnov violated the Dental Law and was, therefore, subject to

---

[11] Section 3(j) of the Dental Law provides that the Board has the power and duty to require biennial renewals of all persons licensed to practice dentistry in Pennsylvania. 63 P.S. §122(j).

15

discipline for his failure to report the Connecticut discipline. We can discern no error of law in the Board's conclusion that Krasnov violated sections 4.1(a)(5) and 11.5 of the Dental Law, 63 P.S. §§123.1(a)(5), 130f.

As to the Board's imposition of a $2,000.00 civil penalty against Krasnov, for violating section 4.1(a)(5) and section 11.5 of the Dental Law, the Board has discretion to impose such a sanction under Act 48. Section 5(b)(4) of Act 48 provides, in full, that

> [i]n addition to the disciplinary powers and duties of the boards and commissions within the Bureau of Professional and Occupational Affairs under their respective practice acts, boards and commissions shall have the power, respectively:
>
> * * *
>
> (4) To **levy a civil penalty of not more than $10,000 per violation** on any licensee or unlicensed person who violates any provision of the applicable licensing act or board regulation.

63 P.S. §2205(b)(4) (emphasis added). As explained above, Krasnov violated two provisions of the Dental Law, and thus, under section 5(b)(4) of Act 48, the Board was empowered to assess a civil penalty of not more than $10,000.00 per violation. Krasnov introduced, and the Board accepted, mitigating factors, including that he did not willfully violate the timeliness of notice provision, and that he was in compliance with the consent agreement. Nonetheless, the Board exercised its discretion in imposing a civil penalty of $2,000 based upon its findings. Even if the Court might have imposed a lesser civil penalty, it is within the Board's discretion to assess and determine the penalty. We next turn our attention to the question of whether the

16

Board abused its discretion by imposing any discipline on Krasnov in light of the mitigating evidence he produced.

### Whether the Board Abused its Discretion by Imposing Discipline on Krasnov

The main thrust of Krasnov's argument is that discipline should not be imposed at all in light of the considerable mitigating evidence that was presented in his favor. As noted above, the Board is vested with discretion in the implementation of its duties.

By way of background, we recognize that

"[t]he right to practice a chosen profession is subject to the lawful exercise of the power of the State to protect the public health, safety, welfare, and morals by promulgating laws and regulations that reasonably regulate occupations." *Khan v. State [Board] of Auctioneer [Examiners]*, []842 A.2d 936, 946 ([Pa.] 2004). A licensing board "'exercises considerable discretion in policing its licensees.'" *Abruzzese v. Bureau of [Professional] & Occupational Affairs, State [Board] of Cosmetology*, 185 A.3d 446, 453 (Pa. Cmwlth. 2018) (citation omitted). Accordingly, our review of disciplinary decisions by a professional board is extremely deferential. *King v. Bureau of [Professional] & Occupational Affairs, State [Board] of Barber [Examiners]*, 195 A.3d 315 (Pa. Cmwlth. 2018).

*Bennett v. Bureau of Professional and Occupational Affairs, State Board of Chiropractic*, 214 A.3d 728, 734-35 (Pa. Cmwlth. 2019). Despite the substantial deference afforded to the Board, its decisions are not completely impregnable from judicial review.

By grant of legislative authority, the Board has discretion when imposing penalties for violations of the Dental Law, and this Court will not "substitute its judgment for that of the Board" or interfere with the Board's discretion

17

unless warranted. *Zook v. State Board of Dentistry,* 683 A.2d 713, 715 (Pa. Cmwlth. 1996). It is well-settled that this Court's review is limited to "whether [a licensing Board's] decision was made in accordance with the law, not whether it was reasonable." *Id.*; *Slawek,* 586 A.2d at 365. "Absent bad faith, fraud, capricious action[,] or flagrant abuse of discretion, a reviewing court will not inquire into the wisdom of an administrative agency's discretionary action or into the details or manner of executing that action." *Bethea-Tumani v. Bureau of Professional and Occupational Affairs, State Board of Nursing*, 993 A.2d 921, 932 (Pa. Cmwlth. 2010) (citing *Slawek*, 586 A.2d 362); *Zook*, 683 A.2d at 715; *Lazorick v. State Board of Dentistry* (Pa. Cmwlth., No. 1558 C.D. 2007, filed Jan. 24, 2008) (unreported), slip op. at 8.[12] Even if a penalty assessed "by the Board appears to this Court to be unreasonably harsh, [we] will not overturn such a decision so long as it is in accordance with the law." *Zook*, 683 A.2d at 715. "While this Court is required to correct abuses of discretion in the manner or degree of the penalties imposed, we will not, absent a manifestly unreasonable exercise of judgment, substitute our discretion for that of the Board, an administrative body endowed with expertise in matters subject to its jurisdiction." *Burnworth v. State Board of Vehicle Manufacturers, Dealers and Salespersons*, 589 A.2d 294, 296 (Pa. Cmwlth. 1991).

As adopted by the Board, the hearing examiner's discussion explained that Krasnov cooperated with the Board and presented mitigating evidence in his favor. Specifically, Krasnov took actions regarding infection control; made sure his office was in compliance with the relevant regulations; is well-regarded and active

---

[12] *Lazorick* is an unreported opinion. Under section 414(a) of this Court's Internal Operating Procedures, an unreported opinion may be cited for its persuasive value. 210 Pa. Code §69.414(a).

within the community; has received no prior complaints; and was not trying to deliberately conceal the discipline. Although the hearing examiner recognized that he was not bound by the doctrine of *stare decisis*, he relied on two recent Board decisions to support his conclusion. *Id*. at 13. The first case concerned a "Board licensee" that was charged with reciprocal discipline with regard to infection control, and a public reprimand and a $1,000.00 civil penalty was issued; the second, concerned a case where an individual was subject to a public reprimand and a civil penalty of $2,000.00 "for reciprocal discipline and failure to timely report the foreign discipline to the Board." *Id*. Thus, the Proposed Adjudication and Order explained that, in consideration of the particular facts and circumstances a public reprimand and a $2,000.00 civil penalty were warranted.

In its decision, the Board acknowledged the significant mitigation evidence outlined in the Proposed Adjudication and Order and explicitly stated that it "considered the additional mitigation" that Krasnov "is well regarded in his community, has no prior disciplinary history, and [] self-reported to all other jurisdictions in which he is licensed." (Final Adjudication and Order at 4.) The Board explained that it "weighed" the mitigation evidence against the violations found in Connecticut and noted the "serious nature of infection control violations and the risk that such violations caused to [Krasnov's] patients." *Id*. Specifically, the Board stated that

> having carefully reviewed the available records in this matter, [it] concludes that the hearing examiner's proposed order is justified. As stated above, [r]eciprocal discipline prevents licensed professionals from violating the laws or regulations of one state, being disciplined, and then violations [sic] as [Krasnov] is an active licensee in the Commonwealth. A public reprimand and civil penalty are sufficient to place the public on notice of the violations in

19

> Connecticut and to deter future violations of the Board[']s
> act and regulations by [Krasnov] and other licensees.

*Id*. at 5.

Keeping in mind the deference given to the Board in the exercise of its discretion, we must conclude in this matter that the Board did not abuse its discretion. Although we are cognizant of the considerable mitigating evidence presented in this case, we are constrained to uphold the Board's discipline.

Accordingly, the Board's July 23, 2019 decision is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rostislav Krasnov, D.D.S.,                  :
               Petitioner        :
                             :    No.  1113 C.D. 2019
            v.                       :
                             :
Bureau of Professional and                  :
Occupational Affairs, State Board           :
of Dentistry,                               :
               Respondent       :

## ***ORDER***

AND NOW, this 9th day of June, 2020, the July 23, 2019, final adjudication and order of the Bureau of Professional and Occupational Affairs, State Board of Dentistry, is AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge